UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| MARY SUE HALLCY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. |
| ) | 5:09-CV-135-BG |
| ) | ECF |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Mary Sue Hallcy seeks judicial review of a decision of the Commissioner of Social Security denying her application for Supplemental Security Income. The United States District Judge transferred this case to the United States Magistrate Judge, but Hallcy did not consent to the jurisdiction of the court. Pursuant to the order of transfer, the undersigned files this "Report and Recommendation." After reviewing the arguments of the parties, the administrative record, and the applicable law, this court recommends that the Commissioner's decision be affirmed and that this action be dismissed.

**I.      Standards of Review**

In order to determine whether a claimant is disabled, the Commissioner considers the applicant's claim under a five-step sequential evaluation. 20 C.F.R. § 416.920 (2009); *see Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). Under the sequential evaluation, the ALJ decides whether the claimant: (1) is not working in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals a listed impairment in Appendix I of the regulations; (4) has an impairment that prevents him from doing past relevant work; and (5) has an impairment

that prevents him from doing any other work. *Id*.

The court's review of the Commissioner's decision is limited to determining whether the decision is supported by substantial evidence from the record as a whole and whether the Commissioner applied the proper legal standards in reaching his decision. *Perez v. Barnhart*, 415 F.3d 457, 462 (5th Cir. 2005). "Substantial evidence" is such relevant evidence – more than a scintilla and less than a preponderance – that a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citations and quotations omitted). The Commissioner's decision is granted great deference and will not be disturbed unless the court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

## II.     Facts

Hallcy applied for benefits at the age of 42 claiming that she suffered from Systematic Lupus Erythematosus ("Lupus") and problems with her shoulders. (Tr. 83.) She previously worked as a cashier and telemarketer, and her last jobs were in a peanut factory where she worked in the shipping and quality control departments. (Tr. 18-19, 84.) Hallcy stopped working because she believed her illness was interfering with her job; her work in the peanut factory required her to lift and load objects, which she could no longer do because of problems with her right shoulder. *Id*. She testified that she underwent surgery on her shoulder one month after she quit working but claimed she remained unable to work because of body aches, weakness, and fatigue. (Tr. 10-22.) She also testified that her physician planned to perform surgery on her right shoulder again and on her left shoulder at a later time. (Tr. 12-13.)

The Administrative Law Judge ("ALJ") determined at the fourth step of the sequential

evaluation that Hallcy could perform the work she previously did as a telemarketer and cashier. (Tr. 30.) Hallcy contests the ALJ's fourth step determination on several grounds and claims the ALJ failed to give adequate weight to physician opinion, erred in evaluating her credibility, and failed to fully and fairly develop the record.

## III.   The ALJ's Step Four Determination

At step four of the sequential disability evaluation, the ALJ must assess the claimant's residual functional capacity and determine whether, given the claimant's residual functional capacity, he can perform his past work. 20 C.F.R. § 416.920(a)(4)(iv). If, despite his impairments, the claimant is still able to perform his past work, the ALJ must determine that he is not disabled. *Id.* The claimant bears the burden of proving that he cannot perform his past work. *Villa v. Sullivan*, 895 F.2d 1019, 1023 (5th Cir. 1990) (citing *Hollis v. Bowen*, 837 F.2d 1378, 1386 (5th Cir. 1988)).

In this case the ALJ determined that Hallcy suffered from severe impairments but that she nonetheless retained the ability to perform light work activity that would allow for a sit/stand option and that would not involve overhead work or constant forward or backward reaching. (Tr. 28.) At the hearing the Vocational Expert ("VE") described the tasks involved in Hallcy's past work at the peanut factory and the tasks involved in her work as a cashier at a parking facility, as a telemarketer, as a clerk at a car rental company, and as a fast food worker. (Tr. 17-18.) The ALJ then asked the VE whether Hallcy could perform any of her past work if she were unable to perform overhead work, and the VE testified that Hallcy would be able to perform her past work as a telemarketer and her past work as a cashier at the parking facility. (Tr. 18-19.) The VE also testified that the telemarketing job was performed at the sedentary exertional level, the cashier job was performed at the light exertional level, and the jobs could be performed with a sit/stand option. (Tr. 19-20.) The ALJ relied upon the VE's testimony and determined that Hallcy could perform her

past work as a telemarketer and cashier. (Tr. 30-31.)

Hallcy first argues that reliance upon VE testimony is improper at step four of the sequential evaluation because the burden has not yet shifted to the Commissioner. She contends that testimony from a VE should be utilized only at step five of the sequential evaluation. Hallcy's argument is without merit. Social Security Ruling 82-62 requires the ALJ to obtain adequate information about the claimant's past work and the impact such work will have upon the claimant's impairments. S.S.R. 82-62, 1982 WL 31386, at *2. The Ruling is clear that the ALJ may obtain this information from either the claimant, the claimant's former employer, or another informed source. *Id*. at *3. In accord with Ruling 82-62, the Fifth Circuit Court of Appeals has held that the determination regarding the physical demands of a claimant's past work may rest on the claimant's testimony as to the actual demands of his past work or on descriptions of the work as it is generally performed in the national economy, *Villa*, 895 F.2d at 1022, and the ALJ may rely upon testimony from a VE in making these determinations, *see Leggett*, 67 F.3d at 564-65 (upholding step four determination based on VE testimony). This is what the ALJ did in this case.

Hallcy next claims that the ALJ did not present a clear and precise hypothetical question to the VE and that he "simply interjected the possible limitations . . . in a very casual way." Hallcy's argument does not require remand. First, nothing in the regulations requires the ALJ to articulate a particularized hypothetical question to the VE. In addition, there was no need for such questioning in this case because the ALJ was not attempting to determine whether a hypothetical person could perform work that might exist in the national economy; rather, he was attempting to determine whether Hallcy could perform particular work she had performed in the past.

In her next argument Hallcy claims the ALJ did not qualify the VE on the record or elicit

4

objections from Hallcy's representative. However, according to the transcript of the hearing, the testimony from the VE was sworn, and Hallcy's representative was given an opportunity to question the VE and did so. (Tr. 17, 20-21.)

In her final argument regarding the ALJ's step four determination, Hallcy claims the ALJ failed to obtain adequate information regarding the tasks associated with the job she performed as a parking lot cashier. Hallcy claims the ALJ did not inquire as to whether the job involved taking money or merely handing out tickets, and she clams that assumptions were therefore made about whether the job involved reaching. She also points to a form she completed during the application process on which she reported that the job involved reaching seven hours during the work day. (*See* Tr. 106.) The District Court need not determine whether the ALJ erred in relying on the VE's testimony that Hallcy could perform the job of cashier because the ALJ also determined that Hallcy could perform the telemarketing job. (Tr. 30-31.) Thus, even if the court were to assume, *arguendo*, that the ALJ's determination that Hallcy could perform her past work as a cashier was reached in error, any error must be considered harmless because the ALJ determined that she could perform another job she worked at in the past – the telemarketing job. Error is regarded as "harmless" when it does not compromise the ALJ's ultimate conclusion. *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988); s*ee also Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (remand not required in cases in which the ALJ would not have reached a different conclusion in absence of the alleged error). The claimant bears the burden of proving that he cannot perform his past work. *Villa*, 895 F.2d at 1023 (citing *Hollis v. Bowen*, 837 F.2d 1378, 1386 (5th Cir. 1988)). Hallcy has not shown that she cannot perform her past work as a telemarketer.

**IV.** **Physician Opinion**

Hallcy complains that the ALJ failed to give controlling weight to an opinion from her

5

treating physician J. Michael Calmes, M.D., and that he discounted an opinion from Dwight D. Hood, M.D., a consulting and examining physician. Dr. Calmes completed a form entitled "Medical Release/Physician's Statement" on May 8, 2007, and checked a box indicating that Hallcy was unable to work and that her disability was permanent. (Tr. 231.) The Fifth Circuit Court of Appeals has held that in the absence of reliable medical opinion controverting the claimant's treating physician, the ALJ may reject the opinion of the treating physician only if the ALJ analyzes the treating physician's opinion under the factors set forth in the regulations. *Newton*, 209 F.3d at 453 (citing 20 C.F.R. § 404.1527(d)). The court analyzed the ALJ's obligation in regard to treating physician opinion again in *Frank v. Barnhart*, 326 F.3d 618 (5th Cir. 2003). Citing to § 404.1527, the court held that subsection (d) of the regulation applies explicitly to "medical opinions" and, under the regulation, some physician opinions, such as opinions that a claimant is "disabled" or "unable to work" are not medical opinions; rather, they are legal conclusions reserved to the Commissioner and, as such, are not entitled to special significance in the ALJ's determination. *Id*. The court concluded that the physician's opinion at issue in *Frank* – that the claimant could not work – did not fall within the regulatory definition of "medical opinion," and the ALJ was therefore not required to analyze it under the regulatory factors. *Id*. This Court is bound by Fifth Circuit precedent and must apply *Frank* to the facts of this case. Dr. Calmes' opinion that Hallcy is "disabled" and that the disability is permanent are legal conclusions rather than medical opinions and are not, therefore, entitled to controlling weight. *Frank*, 326 F.3d at 620. The ALJ did not err in rejecting Dr. Calmes' opinions.

Likewise, there was no error in the ALJ's decision to reject Dr. Hood's opinion. The ALJ must consider and evaluate the opinions of consulting physicians. 20 C.F.R. § 416.927(f)(2). On

the other hand, "the ALJ is entitled to determine the credibility of medical experts . . . and weigh their opinions accordingly." *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994) (citations and internal quotations omitted). The ALJ's "power to judge and weigh evidence includes the power to disregard" opinion evidence, and courts must uphold such a determination if it sis upported by substantial evidence. *Id*. at 238. Dr. Hood examined Hallcy at the request of the State agency disability services on September 5, 2007, and provided a narrative in which he stated that Hallcy was capable of lifting and carrying only five pounds. (Tr. 261-63.) As the ALJ noted, Dr. Hood's statement was based on Hallcy's subjective reports and complaints rather than on objective medical testing. (*See* Tr. 29, 263.) It is within the ALJ's discretion to reject a physician's opinion on such grounds. *See Greenspan*, 38 F.3d at 237-38 (upholding the ALJ's rejection of a physician's opinion on grounds, *inter alia*, that the opinion was based on patient history).

**V.     The ALJ's Credibility Determination**

The ALJ's failure to consider testimony regarding the claimant's subjective complaints of pain and disability is reversible error. *Scharlow v. Schweiker*, 655 F.2d 645, 648-49 (5th Cir. 1981). Often referred to the credibility determination, the analysis requires the ALJ to weigh the objective medical evidence and assign articulated reasons for discrediting the claimant's subjective complaints. *Abshire v. Bowen*, 848 F.2d 638, 642 (5th Cir. 1988) (citation omitted). The ALJ must "indicate the credibility choices made and the basis for those choices. *Scharlow*, 655 F.2d at 648-49; *see also* S.S.R. 96-7P, 1996 WL 374186 (The ALJ's decision must include findings that are "sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.").

7

Hallcy complains of two grounds on which the ALJ found that she was not a fully credible witness. She first claims the ALJ based his determination that she was not a fully credible witness in part on a statement Dr. Calmes' made in a treatment note. In fact, the ALJ noted that Hallcy had undergone treatment for Lupus under Dr. Calmes, but the physician had noted that Hallcy "had complied poorly with medications and appointments." (Tr. 30.) The ALJ did not err. As the Commissioner argues, the record contains numerous notations of Hallcy's poor compliance with treatment. Dr. Calmes noted on June 23, 2006, that Hallcy was instructed at her last appointment in January 2006 to follow up in two months and to schedule an MRI, but she did neither and had missed "multiple appointments." (Tr. 183.) On August 30, 2006, Dr. Calmes noted that Hallcy was one month late for her appointment and that she had exhibited "poor compliance." (Tr. 182.) In December 2006 Dr. Calmes noted that Hallcy had not attempted to make an appointment with an orthopedic surgeon despite his recommendation that she do so. (Tr. 179.) He also noted that Hallcy had declined to undergo physical therapy. *Id*. Substantial evidence supports the ALJ's determination that Dr. Calmes believed Hallcy exhibited poor compliance with treatment recommendations. The ALJ may consider a claimant's failure to follow prescribed treatment. *See Johnson v. Sullivan*, 894 F.2d 683, 685 n.4 (5th Cir. 1990) (failure to follow prescribed treatment regimen precludes award of benefits).

Dr. Calmes' notation regarding Hallcy's poor compliance with treatment was not the only evidence upon which the ALJ based his credibility determination. The ALJ also considered evidence that surgical repair of Hallcy's right shoulder had been successful as well as medical evidence that rebutted Hallcy's allegations of constipation, nausea, and diarrhea. (Tr. 30.) Finally, although Hallcy argues that the ALJ failed to consider the impact her pain would have upon her

8

ability to work, it should be noted that the ALJ credited Hallcy's complaints of pain to some extent. The ALJ accommodated Hallcy's complaints of shoulder pain by limiting her to work that would not involve overhead work or constant reaching, and he accommodated her complaints of pain and fatigue by limiting her to work that would allow her to sit or stand at her option. *Id.* The responsibility for determining whether pain is disabling lies with the ALJ and his decision in this regard is entitled to considerable judicial deference. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001). Because the ALJ's determination in this case is supported by substantial evidence, it should be affirmed.

## VI.     The Development of Record Evidence

Hallcy contends that it is the Commissioner's responsibiltiy to develop the claimant's complete medical history for at least the 12 months preceding the month in which the application for benefits is filed. Citing to the regulations, she claims the Commissioner must make reasonable efforts to obtain reports from the claimant's medical sources, and she argues that the ALJ did not fully develop the record because there are no records from Dr. Calmes after March 13, 2007. Hallcy's argument is without merit. On March 21, 2007, the Commissioner requested records from Dr. Calmes that were generated from March 1, 2006, to the date of the request, and the records were received and implemented into the record. (Tr. 176-210.) In a letter dated July 26, 2007, the Commissioner requested additional records from Dr. Calmes that were generated from March 14, 2007, to the date of the request, and Dr. Calmes submitted the records and the records were incorporated into the record. (Tr. 232-240.) Contrary to Hallcy's contention, the last record from Dr. Calmes is dated August 9, 2007, rather than March 13, 2007. (Tr. 236.)

To the extent Hallcy believes other records from Dr. Calmes should have been obtained, she has failed to show prejudice that would justify remand. In a case in which the claimant contends the ALJ failed to meet his obligation to request additional evidence, remand is appropriate only if the claimant demonstrates he was prejudiced by the failure. *Newton*, 209 F.3d at 458. A claimant can establish prejudice by showing that if the ALJ would have fulfilled his obligation to fully develop the record, such evidence would have been produced and the additional evidence might have led to a different decision. *Id.* Hallcy has pointed to no evidence that may exist that might have led to a different decision in her case.

## VII. Recommendation

Based on the foregoing discussion of the issues, evidence and the law, this court recommends that the United States District Court affirm the Commissioner's decision and dismiss Hallcy's complaint with prejudice.

## VIII. Right to Object

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or

adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: May 27, 2010.

_____
NANCY M. KOENIG
United States Magistrate Judge

11